## GUARANTY STATE BANK v. SUMNER.
### (No. 2570.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 9, 1925. Rehearing Denied Jan. 6, 1926.)

**1. Banks and banking ⬅︎154(5)—Petition held to state cause of action against bank for conversion.**

Petition *held* to state cause of action against bank for conversion by appropriating proceeds of cattle to payment of buyer's debts to itself, after promising seller to pay buyer's checks.

**2. Pleading ⬅︎34(3, 7)—Every reasonable intendment indulged in favor of pleading, in absence of exceptions, either on demurrer or appeal.**

In absence of exceptions, every reasonable intendment will be indulged in favor of pleading, either on general demurrer or when question is first raised on appeal.

**3. Appeal and error ⬅︎212—Instructing verdict fundamental error, if cause of action is not shown.**

If cause of action is not shown, instructing verdict for plaintiff is fundamental error.

**4. Banks and banking ⬅︎134(1)—Bank appropriating funds to payment of depositor's debt to it, after promising to pay depositor's check, guilty of conversion.**

Bank promising payee to pay check assigned maker's funds then in bank, pro tanto, thereby

becoming liable for payment thereof, and hence was guilty of conversion in subsequently appropriating them to payment of maker's debt to it.

**5. Banks and banking ⬤134(1)—Bank applying depositor's funds to payment of debt, with knowledge that checks it had promised to pay were outstanding, not entitled to protection on equitable grounds.**

Bank applying funds to payment of depositor's debt to it, with knowledge that money was proceeds of sale of cattle to depositor, and that latter's checks therefor, which it had promised to pay, were outstanding, *held* not entitled to protection on any equitable ground, in absence of showing of injury to itself.

**6. Bills and notes ⬤1—"Check" defined.**

A "check" is a written order directing a bank or broker to pay money as stated therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Check.]

**7. Banks and banking ⬤140(3)—Act requiring written acceptance of bill by drawee held inapplicable.**

Vernon's Ann. Civ. St. Supp. 1922, art. 6001—132, requiring written acceptance of bill by drawee, *held* inapplicable to checks payable on demand, which bank promised to pay on presentation.

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Action by O. W. Sumner against the Guaranty State Bank. Judgment for plaintiff, and defendant appeals. Affirmed.

A. C. Hatchell, of Dallas, and Williams & Martin, of Plainview, for appellant.

W. H. Bledsoe, of Lubbock, and Kinder & Russell, of Plainview, for appellee.

RANDOLPH, J. This suit was filed by appellee in the district court of Hale county, Tex., against appellant. On trial of the case before a jury, at the close of the taking of testimony by both parties, the trial court instructed a verdict in favor of appellee, and on such verdict judgment was rendered in favor of appellee, and appeal was duly taken to this court by appellant.

That the questions presented by appellant's propositions may be understood, we give excerpts from appellee's petition as follows:

"That on July 17, 1922, plaintiff was the owner of and sold to one Brooks Hale a number of cattle, to be thereafter delivered by plaintiff to the said Hale. That at the time of the making of said contract, the said Hale gave his personal check to plaintiff and against defendant bank for the sum of $1,750, as a part of the purchase price for said cattle. That on or about said date plaintiff notified defendant bank of said sale, and asked as to the payment of said check, and was assured by defendant that the check of said Hale given in payment for said cattle would be by said bank paid upon pres-

sentation. That said check for $1,750 was in due course of business sent to defendant bank and by said bank duly paid.

"That on November 16, 1922, plaintiff delivered all of said cattle so sold to the said Brooks Hale in Lynn county, Tex. That at said time said Brooks Hale made, executed, and delivered to plaintiff his personal check on defendant bank of date November 16, 1922, and payable to the order of plaintiff for the sum of $3,650, and $325, respectively, aggregating the sum of $3,975. That on said date the said Brooks Hale shipped said cattle to the markets in Kansas City, Mo., and thereafter on the 20th day of November, 1922, sold the same through the Ralph Wright Commission Company of Kansas City. That immediately following said sale of said cattle, the Ralph Wright Commission Company, by and under the direction of the said Brooks Hale, transmitted all of the money derived from the sale of said cattle to the defendant bank at Plainview, Tex., which said money was far in excess of the amount due to plaintiff on said two checks, and was by said bank duly received. That immediately upon the delivery of said cattle, plaintiff notified the defendant bank of the delivery thereof, of the execution and delivery of said checks to plaintiff, and requested that he be notified that same would be by the defendant bank paid upon presentation.

"That thereafter the defendant bank notified this plaintiff that said checks would be paid upon presentation and upon return of Brooks Hale to the city of Plainview. That upon the return of said Hale to the city of Plainview the defendant bank had him notify this plaintiff that said checks would be promptly paid. That long prior to the date that said money was by the defendant bank received from the Ralph Wright Commission Company, defendant was fully informed and advised that said money, which was being sent to them by the Ralph Wright Commission Company, was that derived from the sale of said cattle, and that same was intended to be applied to and by it used in the payment of said checks given in payment for said cattle. That but for the promise of defendant company to pay said checks as above set out plaintiff could and would have stopped the payment of said funds by the Ralph Wright Commission Company to the defendant for the account of said Brooks Hale, and by reason of defendant's said conduct plaintiff was prevented from so stopping payment of said money. That after being fully advised with reference to the giving of said checks the consideration therefor, and being fully advised that the money so sent to it by the said Ralph Wright Commission Company was that derived from the sale of plaintiff's cattle and was to be used for and in payment for said cattle and for no other purpose, the defendant wrongfully, fraudulently, and without right converted said money to its own use and benefit, and thereafter and at all times since has failed and refused to pay the amount due on said checks or any part thereof to this plaintiff or its order."

Plaintiff further alleges that, notwithstanding the bank was fully advised of all the facts, and that it was their lawful obligation to pay checks out of the money derived

from the sale of the cattle, that it refused to pay said checks, but fraudulently applied the money to obligations of its own.

Plaintiff's petition closes with the following prayer for relief:

"Plaintiff prays that defendant be cited to appear and answer this cause; that upon trial thereof he have judgment against defendant for the amount of said debt, as evidenced by said checks, together with interest thereon from the 16th day of November, 1922, at the rate of 6 per cent. per annum, for all costs of suit, and for all other relief, both general and special, either in law or equity, to which plaintiff may be entitled."

[1] Appellant's answer contained a general exception, ten special exceptions, and a general denial. No action appears to have been taken by the trial court upon the exceptions, and no questions arising on such exceptions are presented here, and appellant has assigned one error—that the court erred in peremptorily instructing the jury to find a verdict for the plaintiff. Under this assignment appellant has four propositions, the first of which is only a summary of plaintiff's cause of action as pleaded; the second is that the plaintiff did not show any cause of action against appellant upon his checks, because his petition did not allege and the evidence did not show or tend to show that the defendant had accepted or certified the checks in any manner recognized by law; third, plaintiff does not show any cause of action against the bank for conversion, because neither his petition nor the evidence shows that the money received by defendant from the commission company was the property of plaintiff, or that plaintiff had any lien upon such funds, and because by his petition the plaintiff elected to sue upon his checks and not to rescind the sale; and, fourth, because the plaintiff did not show any cause of action against the defendant for fraud, in that the petition did not allege and the evidence did not show that the defendant made any representations whatever to the plaintiff inducing him to part with his cattle, or that any statement or conduct of the defendant influenced the plaintiff to act to his injury.

We do not think that the plaintiff's petition or the evidence is subject to the objection made. Plaintiff sets out his cause of action at length, and it appears therefrom such suit is one for conversion, in that the bank, knowing that the money received by it was the proceeds of plaintiff's cattle, that the owner of the cattle had parted with his title to same on faith of the checks, and that the bank, before appropriating the money to its own use, had promised to pay such checks, unlawfully appropriated it to its own use in payment of debts to itself.

[2] In the absence of exceptions, every reasonable intendment as against same will be indulged in favor of the pleading, as well as where a general demurrer is leveled at the pleading. Central & M. R. Co. v. Morris & Crawford, 68 Tex. 49, 3 S. W. 457; Davis v. Burkholder (Tex. Civ. App.) 218 S. W. 1101. The question arising here for the first time, so far as the pleadings are concerned, we hold that the petition on its face shows a cause of action against the defendant.

[3] As to the evidence and its sufficiency, if a cause of action is not shown, the court's action in instructing a verdict presents fundamental error, and the assignment to that effect requires the consideration of the question.

[4] These facts are outstanding and undisputed: Plaintiff was the owner of certain cattle; he sold them to one Hale and received from Hale the checks in payment therefor; the cattle were shipped to Kansas City to a commission firm by Hale and sold on that market by the commission firm for Hale; the money received by the commission firm reached appellant bank, and was by it appropriated to pay its debt; that the same day the cattle were sold in Kansas City, November 20, 1922, the appellee wired appellant:

"Brooks Hale has received the calves that he had contracted from O. W. Sumner. Will the bank pay the check. I want to know so my bank will release the calves. Answer quick."

In answer to this telegram the bank wired Sumner on the same day:

"How much is the check given you by Brooks Hale and how many calves did he get from you."

Answering this the appellee wired the appellant bank on the 21st of November, 1922,

"285 Calves. Check $3,950."

The cattle were sold, as stated, on November 20, 1922, and the money deposited in the Kansas City Bank. On the 21st of November, 1922, the Kansas City Bank wired appellant bank:

"We credit your account $3,000 deposited by R. W. Wright for account Brooks Hale."

And on November 23, 1922, said bank wired the defendant bank:

"We credit your account $785.78 deposited by R. W. Wright for account Brooks Hale."

There is no evidence as to when these deposits were specifically appropriated and applied by the defendant bank to the extinguishment of Hale's debt to it. We do find that appellant's ledger sheet, containing Hale's deposit and checking account, shows that on November 21, 1922, Hale had an overdraft of $8,926.98; that on November 22, 1922, this overdraft was cut down to $1,926.-98; also, that on November 21, 1922, a deposit was credited of $3,000. If this $3,000 had been deducted from the November 21st overdraft it would still have left an over-

draft of $5,926.98. However, on November 22, 1922, the account also shows a deposit of $7,000, which, taken from the November 21, 1922, overdraft, would have left the sum of $1,926.98, the exact amount of the overdraft of November 22, 1922. Consequently it will be seen that the appellant bank had not, on the last-named date, applied such deposit of $3,000 to their own indebtedness due them by Hale. On November 23, 1922, the account shows an overdraft of $1,141.20, and on that date a deposit of $785.78, which, taken from the overdraft of the day before—$1,926.98—leaves exactly $1,141.20, the amount of the overdraft of November 23, 1922. On November 24, 1922, the deposit account shows a deposit of $1,190, offset against the overdraft of November 23, 1922, leaves a balance in favor of Hale of $48.80 on November 24, 1922, which the ledger sheet shows to be $46.80 overdraft, and which is clearly error. This leaves the $3,000 undisposed of. We make this calculation for the purpose of showing whether or not, at the time the cashier Powers promised to pay the checks, there had been any express application of such deposits of Hale's money received by defendant bank from the proceeds of the cattle sold him by appellee. It is clear that there had not been. As shown by the ledger sheet, Hale's deposit evidently was not intended to be offset to the bank's debt at that time, and this is further clearly indicated by the conversation between appellee and Claude Powers, the cashier of defendant bank, which is not contradicted, in which appellant says that the cashier promised him on the 23d of November, 1922, that when Hale returned to town they would pay the check. This being correct, we hold that, by the bank's promise to appellee that the bank would pay the check, there was an assignment of such funds then in the bank, pro tanto, and the appellant thereby became liable for the payment of such funds, and that its appropriation of same to the payment of its own debt was unlawful. Conn v. San Antonio Nat. Bank (Tex. Com. App.) 249 S. W. 1045.

[5] It is clear from all of the evidence that the money received by the bank, defendant, came from the proceeds of the sale of Hale's cattle which he had purchased from appellee; that at the time the bank received same they knew that the money was the proceeds of such sale, and knew that checks were outstanding which were given for the purchase of the cattle; hence, there is no equitable ground, the bank not showing injury, upon which appellant can ask that it be protected in such application of such funds when it had due notice of the fact that such checks were outstanding and had promised to pay them.

[6, 7] A check is defined "as a written order directing a bank or broker to pay money as stated therein." 11 C. J. p. 748. Unless otherwise provided therein, the bank has only to pay or refuse to pay a check presented to it. In the ordinary business transaction, where a check, payable on demand, is presented to a bank, there is no occasion for an acceptance by the bank. But if the check is payable at a future date, and is presented to a bank for acceptance, the failure of the bank to put its acceptance in writing would be a legal objection to its liability, because of failure to comply with the statutory provisions. Hence we do not believe that article 6001—132, Vernon's Ann. Civ. St. Supp. 1922, apply to the checks here in controversy.

We therefore overrule appellant's assignment, and affirm the judgment of the trial court.